UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GREGORY AUSTIN GADSON,

                    Plaintiff,

          -against-

RIVERBAY CORPORATION,

                    Defendant.

1:25-CV-5182 (LTS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff Gregory Austin Gadson, proceeding *pro se*, commenced this action by filing a "Brief Summary in Support of Motion for Temporary Restraining Order, Federal Removal, and Declaratory Relief" (ECF 1) on June 20, 2025. By order dated and entered on August 4, 2025, the Court dismissed this action for lack of subject matter jurisdiction. (ECF 12.) The Court, however, granted Gadson 30 days' leave to file an amended complaint in which he alleges facts showing that this court has subject matter jurisdiction to consider this action. On August 19, 2025, Gadson filed the following submissions,[1] apparently in response to the Court's August 4, 2025 order[2]: (1) an "Amended Complaint for Violations of the Fair Housing Act and State Law"

---

[1] These submissions were entered on the docket on August 21, 2025.

[2] The Court, in its August 4, 2025 order, noted that Gadson was attempting to remove a civil action, in which he was a party, that appeared to have been originally filed in the Civil Court of the City of New York, Bronx County, Housing Part. (ECF 12, at 1 n.1.) The Court, noting that Gadson referred to himself as "Plaintiff" and had failed to comply with the requirements to remove a civil action from a state court, regarded Gadson's initial pleading as a complaint by which Gadson, not Defendant Riverbay Corporation, had initiated this civil action in this court, not in the state court. (*Id.*) It appears that, with respect to those submissions filed in response to the Court's August 4, 2025 order, Gadson maintains that he is attempting to remove a civil action from that court. For the reasons first discussed in the Court's August 4, 2025 order (*id.*), and in this order, *see infra* at 10-13, the Court holds that this action was not properly removed from a state court, and that Gadson actually initiated this action in this court as the plaintiff, and not as the defendant-respondent-relator removing this action from a state court. To

(ECF 14) ("amended complaint"); (2) a "Declaration of Timeliness pursuant to 28 U.S.C.

§ 1446(b)(3)" (ECF 16) ("first declaration"); and (3) an "Emergency Motion for [a] Temporary

Restraining Order" (ECF 17) ("TRO motion").[3] On August 21, 2025, Gadson filed a

"Declaration . . . Regarding Compliance with 28 U.S.C. § 1446(b)" ("second declaration").[4]

(ECF 18.)

In his amended complaint, Gadson sues Riverbay Corporation ("Riverbay"), a Bronx

corporation of which Gadson appears to be a shareholder.[5] Riverbay seems to own the Bronx

apartment building in which Gadson resides, and is or was Gadson's landlord with respect to an

apartment that Gadson has or had leased from Riverbay as a tenant. Gadson invokes the court's

federal question subject matter jurisdiction, raising claims under the Fair Housing Act ("FHA")

and under state law. In his amended complaint, Gadson seeks: (1) declaratory relief (a

declaration "that Riverbay's acts and omissions constitute unlawful discrimination and retaliation

---

avoid any confusion when referring to the parties, however, the Court will not refer to them as "Plaintiff" or "Defendant," but by their names.

[3] Rule 5.2 of the Federal Rules of Civil Procedure requires submissions filed with the court that refer to a person's Social Security number to reveal only the last for digits of that person's Social Security number. Fed. R. Civ. P. 5.2(a)(1). That same rule requires submissions filed with the court that refer to a minor child to refer to that child using only the child's name's initials. Fed. R. Civ. P. 5.2(a)(3). This rules exists to prevent the dissemination of a person's private information via publicly available court submissions. A person who reveals their own private information, such as their own Social Security number, waives the protection of that rule. *See* Fed. R. Civ. P. 5.2(h). In his amended complaint and in his TRO motion, Gadson reveals his and other persons' complete Social Security numbers and what appears to be the full name of a minor child. For this reason, and in an abundance of caution, the Court has directed the Clerk of Court to restrict electronic access to those submissions to a "case participant-only" basis.

[4] On August 1, 2025, but not entered until August 5, 2025—after the Court's August 4, 2025 order had already been entered—Gadson filed a "Declaration of Judicial Encumbrance, Fiduciary Breach, and Commercial Trespass." (ECF 13.) The Court will not address that submission here, as the subsequently filed submissions discussed herein appear to supersede it.

[5] It appears that Riverbay is better known as "Co-op City." *See* https://perma.cc/92C4-F77P.

in violation of the [FHA]"); (2) injunctive relief (a preliminary and permanent injunction preventing Riverbay from "dispossess[ing] or evict[ing]" Gadson from the Bronx apartment at issue "during the pendency of this action, preserving the status quo and preventing the irretrievable loss of housing stability," and directing Riverbay to "issue a duly certified stock certificate in [Gadson's] name and [to] renew the . . . lease" with respect to that apartment; (3) damages; and (4) unspecified "additional equitable or legal relief as this Court . . . deems just, proper, and necessary." (ECF 14, at 10-11.)

In his TRO motion, Gadson asks this Court to: (1) enjoin Riverbay, "its agents, and the New York City Marshal from proceeding with any eviction or dispossession of [Gadson] and his minor daughter from [the apartment at issue] . . . during the pendency of this action"; (2) "[p]reserve [Gadson's] tenancy and occupancy rights in the [apartment at issue] until this Court has resolved the merits of the underlying claims"; (3) "[m]aintain the status quo so that [Gadson's] minor daughter is not displaced from her sole primary residence, school, and caregiving network while the Court considers the equitable and statutory issues raised"; and (4) "[g]rant such other temporary and equitable relief as this Court deems just and proper to prevent irreparable harm." (ECF 17, at 7.)

Gadson's August filings include a first declaration consisting of a "notice of removal," as well as a declaration asserting why Gadson believes that this action was timely removed from the Civil Court of the City of New York, Bronx County, Housing Part ("Housing Court"). In his second declaration, Gadson asserts that he has complied with the procedural requirements to remove his Housing Court action from that court to this court. (ECF 18.)

For the reasons discussed below, the Court holds that this action was not properly removed from the Housing Court, Gadson's attempt at removal was ineffective, and that the

Court does not now have, nor ever had, jurisdiction of any aspect of the Housing Court litigation. In light of Gadson's *pro se* status, the Court, once again, construes this action as originally initiated by Gadson in this court, as the plaintiff in this action, and not originally by Riverbay as the petitioner/plaintiff in the Housing Court. In addition, for the reasons discussed below, the Court denies all of Gadson's requests for immediate injunctive relief in his TRO motion and in his amended complaint. Moreover, for the reasons set forth below, the Court dismisses without prejudice all claims that Gadson asserts *pro se* on behalf of his minor daughter. The Court also dismisses those claims under the FHA that Gadson asserts on his own behalf, for failure to state a claim on which relief may be granted, but grants Gadson 30 days' leave to file a second amended complaint with respect to those claims, and any claims under state law that he asserts on his own behalf under the Court's supplemental jurisdiction, as specified below.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil

Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

The allegations that are the bases for Gadson's claims in this court are deeply intertwined with the litigation that Riverbay initiated against Gadson in the Housing Court in which Riverbay has successfully sought Gadson's eviction from the apartment at issue. For this reason, the Court will recount that Housing Court litigation history here, along with the allegations that are the bases for Gadson's claims. The Court gleans that litigation history from the allegations and attachments in Gadson's amended complaint, TRO motion, and first and second declarations, which the Court construes as all constituting the operative pleading for this action. From all of those submissions, Gadson alleges the following:

Gadson has resided in the apartment at issue for over 28 years. The apartment was originally leased by Riverbay[6] to Gadson's mother, Karen Denise Sidberry, who was also a Riverbay shareholder. At some point, probably due to Sidberry's death, Gadson became a successor tenant with respect to the apartment, as well as a successor Riverbay shareholder. Gadson currently resides in the apartment with his minor daughter.

On December 29, 2020, Gadson executed a three-year lease with respect to that apartment. "Riverbay was obligated to issue [Gadson] a certified stock certificate within 90 days of lease execution." (ECF 17, at 3.) In 2023, Gadson "was able to obtain emergency rental assistance through the New York City Human Resources Administration's 'One-Shot Deal' program, issued due to documented job loss and hardship, . . . [because Gadson] held a valid . . . lease in his name at that time." (ECF 14, at 7.) That lease, however, expired on December 29, 2023. "Riverbay never issued the stock certificate, providing only a photocopy lacking the corporate seal." (ECF 14, at 6.) When the lease expired, "Riverbay refused to renew and continued to withhold a duly certified stock certificate, citing alleged arrears—improperly conflating payment disputes with the statutory duty to issue title documentation." (ECF 17, at 4.) "[W]hen Riverbay refused to renew the . . . lease and withheld a duly certified stock certificate, [Gadson] became categorically ineligible for federal or local housing subsidies, including CityFHEPS and Section 8." (ECF 14, at 7.) "The loss of eligibility for these programs, directly caused by Riverbay's refusal to provide required documentation, substantially contributed to the accrual of the arrears alleged in the underlying eviction proceeding." (*Id.*)

---

[6] Plaintiff describes Riverbay as a "Mitchell-Lama cooperative housing provider." (ECF 14, at 4.)

On April 29 or 30, 2024, Riverbay initiated an eviction proceeding against Gadson in the Housing Court based on non-payment of rent. (*Id.*; ECF 16, at 8-25.) In a decision, order, and judgment dated January 13, 2025, the Housing Court granted possession of the apartment at issue to Riverbay, and directed that a warrant of eviction issue and that the earliest date that Gadson's eviction from that apartment could occur would be on January 15, 2025; this appears to have been granted to Riverbay due to Gadson's failure to appear. (ECF 16, at 30-31.) A notice of eviction issued on February 7, 2025, informing Gadson that the earliest date the eviction could occur would be on February 24, 2025. (*Id.* at 32-34.) Gadson then sought a stay of the eviction pending a decision as to whether to vacate the judgment of eviction, which the Housing Court granted on February 14, 2025. (*Id.* at 42.) It appears that Gadson failed to appear for a hearing, and the Housing Court lifted the stay. Gadson made another request for a stay of the eviction, which the Housing Court granted on April 17, 2025; in that same order, the Housing Court ordered Gadson to prove payment of rent arrears on the May 1, 2025 return date. (*Id.* at 50.) At a hearing that occurred on or about May 1, 2025, in the Housing Court, Gadson sought the continued stay of his eviction from the apartment. In a decision and order issued on that date, the Housing Court granted him that relief until May 30, 2025, on the condition that he pay Riverbay $28,362.06 by that date; the Housing Court also ruled that, if Gadson did not pay Riverbay that amount by that date, the New York City Marshal would execute the eviction after the mailing of a notice of eviction, but if Gadson complied, the warrant and judgment of eviction would be deemed vacated. (*Id.* at 66.) Gadson again, before May 30, 2025, sought to extend the staying of his eviction pending a decision as to whether to vacate the judgment of eviction, but the Housing Court denied that request on May 19, 2025, and reiterated that Gadson was bound by the requirements of the Housing Court's May 1, 2025 decision and order. (*Id.* at 67.) On or about

June 16, 2025, Gadson yet again sought a stay of the eviction as above, but that request, once again, was denied by the Housing Court, with leave to renew if Gadson could show that he had paid Riverbay the amount ordered in the Housing Court's May 1, 2025 decision and order; the Housing Court also reminded Gadson that the amount had been due in May 2025.[7] (*Id.* at 69.) Another notice of eviction then issued on July 21, 2025, notifying Gadson that the earliest date that he could be evicted would be August 5, 2025. (*Id.* at 71-72.) On or about July 29, 2025, Gadson made his most recent request to extend the stay of eviction pending a decision as to whether to vacate the judgment of eviction.[8] On that date, July 29, 2025, the Housing Court denied that request and made the following ruling: "Nothing in the documents attached establish that this proceeding is stayed. . . . Renew with proof of payments made since [May 1, 2025] Order and proof that arrears shall be paid immediately. . . ." (*Id.* at 73.)

Gadson asserts that he "reasonably believed that his federally protected rights would be recognized and adjudicated in Housing Court. Because a federal case number had been previously assigned, [he also] assumed in good faith that the matter had already been properly removed and that federal jurisdiction alone was sufficient to halt the eviction."[9] (ECF 14, at 4-5.)

---

[7] Gadson initiated this action in this court on June 20, 2025.

[8] In that request, Gadson asserted that his Housing Court proceeding had "been moved" to this court. (ECF 16, at 73-74.)

[9] As discussed above, Gadson initiated this action in this court on June 20, 2025. By order dated and entered on August 4, 2025, and mailed to Gadson the next day, the Court dismissed this action for lack of subject matter jurisdiction with leave to replead, and also denied Gadson's previous requests for immediate injunctive relief, including his request for a temporary restraining order, "without prejudice to Plaintiff's making such claims for relief in an amended complaint in which he alleges facts sufficient to show that this court has subject matter jurisdiction to consider this action." (ECF 12, at 3-9.) Among the immediate injunctive relief that Gadson previously sought in this action was "an unspecified temporary restraining order [and] 'authoriz[ation] [for] the removal of this matter from inferior state jurisdiction pursuant to federal statutory authority.'" (*Id.* at 1 (second and third alterations in original).)

In his amended complaint, TRO motion, and first and second declarations, Gadson insists that the Housing Court's July 29, 2025 order "constituted the first 'other paper' within the meaning of 28 U.S.C. § 1446(b)(3), because it made [it] unequivocally clear that state proceedings would move forward toward dispossession without adjudicating [Gadson's] federal claims," making Gadson's attempt at removing his Housing Court action to this court timely.[10] (*Id.*; ECF 16, at 2; ECF 17, at 4; ECF 18, at 6.) In his second declaration, Gadson states that, on August 19, 2025, he filed a notice of removal in this court and a "Notice of Filing Removal" with the Clerk of the Housing Court, and that he also served copies of the notice of removal on Riverbay's counsel by certified mail. (ECF 18, at 2.)

Gadson asserts, in his amended complaint, that "[t]he presence of . . . [his] minor child in [his] household constitutes 'familial status' within the meaning of [the FHA], providing [him] with protection under [that statute]." (ECF 14, at 3-4.) He also asserts that his minor daughter's "lawful, long-term residence [in the apartment at issue] . . . establish[es] her as part of the protected household under the [FHA]." (*Id.* at 6.) Gadson further states that he and his minor daughter "are 'aggrieved persons' within the meaning of [the FHA]." (*Id.* at 8.) He additionally states that Riverbay's refusal to issue him the abovementioned documentation "altered the 'terms conditions, and privileges' of housing within the meaning of [the FHA]," as such documentation is "required to maintain lawful tenancy and to qualify for federally funded housing subsidies." (*Id.*) "Riverbay's actions further constitute unlawful interference under [the FHA], as [it] obstructed and frustrated [Gadson's] and his daughter's exercise and enjoyment of [their] rights protected by the FHA." (*Id.* at 9.) Gadson asserts that Riverbay's refusal "to recognize [his]

---

[10] As repeatedly mentioned above, Gadson initiated this action in this court on June 20, 2025, before the Housing Court issued its July 29, 2025 order.

documented succession rights and his daughter's protected familial status, . . . [constituted]

discriminatory conduct prohibited by the FHA." (*Id.*)

## DISCUSSION

### A.    The Purported Removal from the Housing Court is improper

This action was not properly removed from the Housing Court, principally because the

Housing Court proceedings had ended, and judgment had been entered in those proceedings,

before Gadson commenced this federal court action. Under 28 U.S.C. § 1441:

> [e]xcept as otherwise expressly provided by Act of Congress, any civil action
> brought in a State court of which the district courts of the United States have
> original jurisdiction, may be removed by the defendant or the defendants, to the
> district court of the United States for the district and division embracing the place
> where such action is *pending*.

28 U.S.C. § 1441(a) (emphasis added). Under 28 U.S.C. § 1446, a defendant in state-court civil

action who desires to remove that action to a federal district court must:

> file in the district court of the United States for the district and division within
> which such action is *pending* a notice of removal signed . . . and containing a
> short and plain statement of the grounds for removal, together with a copy of all
> process, pleadings, and orders served upon such defendant or defendants in such
> action.

28 U.S.C. § 1446(a) (emphasis added). The defendant filing the notice of removal must file it:

> within 30 days after the receipt by the defendant, through service or otherwise, of
> a copy of the initial pleading setting forth the claim for relief upon which such
> action or proceeding is based, or within 30 days after the service of summons
> upon the defendant if such initial pleading has then been filed in court and is not
> required to be served on the defendant, whichever period is shorter.

§ 1446(b)(1). Notwithstanding an exception not relevant here:

> if the case stated by the initial pleading is not removable, a notice of removal may
> be filed within 30 days after receipt by the defendant, through service or
> otherwise, of a copy of an amended pleading, motion, order or other paper from
> which it may first be ascertained that the case is one which is or has become
> removable.

§ 1444(b)(3).

Once a defendant has filed a notice of removal with the appropriate federal district court, he must:

> [p]romptly after the filing of such notice of removal . . . give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded.

§ 1446(d).

"[R]emoval is not authorized after final judgment is entered in a state action. . . . [O]nly 'pending' actions may be removed from state to federal court." *Deutsche Bank Nat'l Trust Co, as Tr. for Morgan Stanly Mortg. Loan Trust. 2005-10 v. Reddy* ("*Reddy*"), No. 3:23-CV-0979 (SVN), 2023 WL 8253767, at *3 (D. Conn. Nov. 29, 2023) (quoting § 1441(a)); *see Meghila, LLC v. Chalek*, No. 1:24-CV-8986 (LTS), 2025 WL 436677, at *2 (S.D.N.Y. Jan. 13, 2025) ("[R]emoval is improper once the state court has entered judgment."); *Williams v. Audubon TP4 LLC*, No. 1:23-CV-8758 (LTS), 2023 WL 8528552, at *6-7 (S.D.N.Y. Dec. 5, 2023); *Murray v. Deer Park Union Free Sch. Dist.*, 154 F. Supp. 2d 424, 426 (E.D.N.Y. 2001) ("[A] final judgment . . . may not be removed to this Court so that the plaintiff can relitigate issues already decided by the state court."); *see also Credit One, LLC v. Head*, No. 3:09-CV-1852 (MRK), 2010 WL 3058916, at *1 (D. Conn. Jan. 11, 2010) (noting, in the context of a removal attempt post-state-court judgment, that "[t]he district courts of the United States do not sit as courts of appeal over state court judges ([who], in any event, take the same oath to uphold federal law that the judges of the federal courts do)"); *MHM Sponsors Co. v. Permanent Mission of Pakistan to the United Nations*, 672 F. Supp. 752, 753 (S.D.N.Y. 1987) ("Fundamental to the right of removal is the requirement that there be a case to remove. The state court dismissed this action and has not restored it to the calendar. For this court to decide plaintiff's motion to restore would in essence be to grant an appeal of the state court decision. This the court cannot do." (footnotes

omitted)); *In re 73rd Precinct Station House in Borough of Brooklyn, City of New York*, 329 F. Supp. 1175, 1178 (E.D.N.Y. 1971) ("In essence, petitioner is attempting to appeal the adverse determination of the State court by way of a removal proceeding. This it cannot do.").

The United States Court of Appeals for the Second Circuit has held that:

> it would be a perversion of the removal process to allow a litigant who is subject to a final judgment to remove that final judgment to the federal courts for further litigation. . . . [A] claim that has been reduced to a final judgment in the state court cannot be made subject to relitigation through removal.

*Four Keys Leasing & Maint. v. Smithis* ("*Four Keys*"), 849 F.2d 770, 774 (2d Cir. 1988). In *Four Keys*, the Second Circuit denied a tenant's attempt to remove an action to this court from the Civil Court of the City of New York, which had already issued a final judgment causing dispossession of leased property and the tenant's eviction. *See id.* at 772-74.

The Housing Court's January 13, 2025 judgment granting possession of the apartment at issue to Riverbay and directing Gadson's eviction from the apartment (ECF 16, at -30-31) was the final judgment that resolved the issue as to whether Riverbay was to regain possession of the apartment at issue and as to whether Gadson should be evicted due to Gadson's non-payment of rent arrears. *Cf. Blatch ex rel. Clay v. Hernandez*, 360 F. Supp. 2d 595, 605 (S.D.N.Y. 2005) ("Once a Final Judgment of Possession is entered in Housing Court, [the landlord] may seek a warrant for the resident's eviction."). There is no indication that Gadson ever appealed that judgment to a higher state court, such as the New York Supreme Court, Appellate Term.

Gadson did not initiate this action in this court until June 20, 2025, and he concedes that he did not file a notice of removal until August 19, 2025 (ECF 18, at 2), months after the Housing Court issued the abovementioned January 13, 2025 final judgment. As explained above, Gadson made multiple attempts to delay the execution of that judgment—specifically, Riverbay's resumption of possession of the apartment at issue and his eviction from it—by

seeking multiple stays of the execution of that judgment. (*See* ECF 16, at 42, 50, 66, 67, 69, 73.) None of those attempts to delay the execution of the January 13, 2025 Housing Court final judgment, nor any of the Housing Court's post-judgment orders responding to those attempts, made the Housing Court action "pending" for the purpose of removing that action to this court when Gadson initiated this action in this court on June 20, 2025, or when he filed a purported notice of removal on August 19, 2025. *See Four Keys*, 849 F.2d at 774 ("We can see no reason whatever for Simithis's attempted removal of the state court action [post-judgment] other than to delay the final state court decision finding that he was no longer entitled to possession. . . ."); *cf. Reddy*, 2023 WL 8253767, at *3 ("Thus, despite that Reddy has been attempting to prolong execution of the judgment through various litigation tactics—all unsuccessfully—the case is no longer pending for purposes of seeking removal to federal court.").

Accordingly, to the extent that Gadson is attempting to remove his already adjudicated Housing Court action to this court, such a removal is improper, Gadson's attempt at removal was ineffective, and the Court does not now have, nor ever had, jurisdiction of any aspect of the Housing Court litigation. In light of Gadson's *pro se* status and the claims discussed below, the Court treats this action as a civil matter initiated by Gadson in this court, with Gadson as the plaintiff.

## B.    Claims on behalf of Gadson's minor daughter

It appears that Gadson, as a *pro se* litigant, is raising, at least in part, claims on behalf of his minor daughter. The Court must dismiss those claims. The statute governing appearances in federal court, 28 U.S.C. § 1654, allows two types of representation: "'that by an attorney admitted to the practice of law by a governmental regulatory body, and that by a person representing himself.'" *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007) (quoting *Eagle Assocs. v. Bank of Montreal,* 926 F.2d 1305, 1308 (2d Cir. 1991)). A nonlawyer parent ordinarily

cannot represent a child's interests *pro se*. *See Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990); *see also Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284 (2d Cir. 2005) (holding that it is "a well-established general rule in this Circuit that a parent not admitted to the bar cannot bring an action *pro se* in federal court on behalf of his or her child"). Minors "are entitled to trained legal assistance so their rights may be fully protected" and nonlawyer parents are not trained to represent competently the legal interests of their children. *Cheung*, 906 F.2d at 61. Moreover, "a district court has a duty to raise this issue *sua sponte*." *Thomas v. Astrue*, 674 F. Supp. 2d 507, 511 (S.D.N.Y. 2009); *Fauconier v. Comm. on Special Educ.*, No. 02-CV-1050 (RLE), 2003 WL 21345549, at *1 (S.D.N.Y. June 10, 2003) ("[A] court has an affirmative duty to enforce the rule that a non-attorney parent must be represented by counsel when bringing an action on behalf of his or her child." (citing *Cheung*, 906 F.2d at 61)), *aff'd*, 112 F. App'x 85 (2d Cir. 2004) (summary order).

Gadson gives no indication that he is an attorney. The Court therefore dismisses without prejudice all claims that Gadson asserts *pro se* in this action on behalf of his minor daughter.

**C.    Claims under the FHA**

The Court construes Gadson's submissions as asserting claims of housing discrimination based on familial status, as well as claims of retaliation, under the FHA, on Gadson's own behalf. For the reasons discussed below, Gadson fails to allege facts sufficient to state either type of these claims on his own behalf.

**1.    Claims of housing discrimination under the FHA**

The FHA "broadly prohibits discrimination in housing." *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 93 (1979). Among other things, it prohibits the "refus[al] to sell or rent after the making of a bona fide offer, or . . . [the] refus[al] to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion,

sex, familial status, . . . national origin," or disability. 42 U.S.C. § 3604(a), (f)(1). It also prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, . . . national origin," or disability.[11] § 3604(b), (f)(2).

Generally, to state a claim of intentional discrimination under the FHA, a plaintiff must allege facts showing that he is "'a member of a protected class,' suffered relevant 'adverse' treatment, and '. . . [he must sustain] a *minimal* burden of showing facts suggesting an inference of discriminatory motivation.'" *Palmer v. Fannie Mae*, 755 F. App'x 43, 45 (2d Cir. 2018) (summary order) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) (emphasis in original, footnote omitted)); "'[A] plaintiff need only give plausible support to a minimal inference of discriminatory motivation' at the pleading stage." *Id.* at 45-46 (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)). Thus, "a plaintiff may not need to prove that [his] protected status was a but-for cause of the adverse action [he] suffered, but only a motivating factor." *Id.* at 46 (citing, *inter alia*, *Vega*, 801 F.3d at 86); *see, e.g.*, *Sykes v. NYC Hous. Auth.*, No. 22-CV-2127 (MKV), 2022 WL 875902, at *2 (S.D.N.Y.

---

[11] For the purpose of the FHA, the term "familial status":

means one or more individuals (who have not attained the age of 18 years) being domiciled with—

(1) a parent or another person having legal custody of such individual or individuals; or

(2) the designee of such parent or other person having such custody, with the written permission of such parent or other person.

The protections afforded against discrimination on the basis of familial status shall apply to any person who is pregnant or is in the process of securing legal custody of any individual who has not attained the age of 18 years.

42 U.S.C. § 3602(k).

Mar. 24, 2022); *see also Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 124, 153 (2d Cir. 2025) ("An FHA plaintiff can show . . . intentional discrimination . . . without having to establish that the defendant was motivated by hatred, dislike, or bias."); *MHANY Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 616 (2d Cir. 2016) ("[I]f one of the motivating factors for an act was unlawful, the act violated the FHA.").

Here, Gadson does not allege facts suggesting that any adverse actions that Riverbay took against him were motivated by his familial status, and therefore does not state a claim of intentional familial-status discrimination in violation of the FHA. Rather, the allegations suggest that the adverse actions by Riverbay against Gadson that are described in Gadson's submissions were motivated solely by Gadson's failure to pay rent arrears. The Court therefore dismisses any claims of intentional familial-status discrimination under the FHA, brought by Gadson on his own behalf, for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). In light of Gadson's *pro se* status, however, the Court dismisses these claims without prejudice to Gadson's raising such claims in a second amended complaint in which he alleges fact sufficient to state such a claim.

## 2.    Claims of retaliation under the FHA

The FHA also prohibits "coerc[ion], intimidat[ion], threat[s], or interfere[nce] with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by" the antidiscrimination provisions of the FHA. 42 U.S.C. § 3617. To state a claim of retaliation under the FHA, a plaintiff must allege that he:

> (1) . . . engaged in protected activity by opposing conduct prohibited under the FHA; (2) that defendants were aware of that activity; (3) that defendants subsequently took adverse action against plaintiffs; and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse action.

*Lynn v. Vill. of Pomona*, 373 F. Supp. 2d 418, 432 (S.D.N.Y. 2005), *aff'd*, 212 F. App'x 38 (2d Cir. 2007) (summary order). "Protected activity under the FHA refers to action taken to protest or oppose statutorily prohibited discrimination, *i.e.*, retaliating because a person made a complaint, testified, assisted, or participated in any manner in a proceeding under the FHA." *Paladino v. Beaumont*, No. 20-CV-0065 (JLS), 2023 WL 9469277, at *4 (W.D.N.Y. Sept. 1, 2023), *report & recommendation adopted*, 2024 WL 343308 (W.D.N.Y. Jan. 29, 2024). "[F]or purposes of retaliation, an adverse action is any action that would be sufficiently severe to deter a reasonable person in the plaintiff's position from participating in a protected activity." *Burris v. Hous. & Servs. Inc.*, No. 17-CV-9289 (JGK), 2023 WL 1966120, at *10 (S.D.N.Y. Feb. 13, 2023). A plaintiff can show a causal connection: "'(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow [individuals] who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Id.* at *9 (quoting *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019) (alteration in original)); *see also Gilead Cmty. Servs., Inc. v. Town of Cromwell*, 112 F.4th 93, 101 (2d Cir. 2024) ("[T]he district court did not err in applying a motivating-factor causation to . . . retaliation claims under the FHA consistent with our precedent.")

Gadson alleges nothing to suggest that he engaged in protected activity by opposing conduct prohibited under the FHA, that Riverbay was aware of any such activity, or that a causal connection exists between the protected activity and the adverse action—in other words, that a retaliatory motive was a motivating factor in the adverse action. Rather, it appears from Gadson's factual allegations that any adverse actions that Riverbay took against Gadson were motivated solely by Gadson's failure to pay rent arrears. The Court therefore dismisses Gadson's

claims of retaliation under the FHA that he asserts on his own behalf for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). As above, however, the Court dismisses these claims without prejudice to Gadson's filing a second amended complaint in which he alleges facts sufficient to state such a claim.

## D.    Latest requests for immediate injunctive relief

The Court denies Gadson's latest requests for immediate injunctive relief (ECF 14, at 10-11; ECF 17) for the reasons discussed above. To obtain immediate injunctive relief, a plaintiff must show: (1) that he is likely to suffer irreparable harm and (2) either (a) a likelihood of success on the merits of his claims or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in his favor. *See UBS Fin. Servs., Inc. v. W.V. Univ. Hosps., Inc.*, 660 F.3d 643, 648 (2d Cir. 2011) (citation and internal quotation marks omitted); *Wright v. Giuliani*, 230 F.3d 543, 547 (2d Cir. 2000); *Dennis v. K&L Gates LLP*, No. 1:20-CV-9393 (MKV), 2025 WL 902457, at *2 (S.D.N.Y. Mar. 25, 2025) (quoting *MyWebGrocer, LLC v. Hometown Info, Inc.*, 375 F.3d 190, 192 (2d Cir. 2004)). Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (internal quotation marks and citation omitted).

Because of the abovementioned deficiencies, neither Gadson's amended complaint, TRO motion, nor his declarations demonstrate: (1) a likelihood of success on the merits, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in Gadson's favor. Accordingly, the Court denies Gadson's latest requests for immediate injunctive relief. This denial is without prejudice to Gadson's raising such claims for relief in connection with a second amended complaint in which

he alleges facts sufficient to state a claim of discrimination and/or retaliation, on his own behalf, under the FHA.

While the Court empathizes with Gadson's and his minor daughter's plight, Gadson has not shown any proper basis, under the relevant law, for this Court to interfere with Riverbay's repossession of the apartment at issue and the eviction of Gadson and his minor daughter from that apartment.

## LEAVE TO AMEND GRANTED

Gadson proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (internal quotation marks omitted)). Because Gadson may be able to allege additional facts sufficient to state a claim under the FHA, the Court grants Gadson 30 days' leave to file a second amended complaint in which he alleges facts sufficient to state such a claim, as well as claims under state law under the court's supplemental jurisdiction.

If Gadson does not file a second amended complaint within the time allowed, the Court will direct the Clerk of Court to enter a judgment dismissing this action. The effect of that judgment will be: (1) dismissal of Gadson's claims brought on behalf of his minor daughter without prejudice; (2) dismissal of Gadson's own claims under the FHA for failure to state a claim on which relief may be granted, *see* 28 U.S.C. § 1915(e)(2)(B)(ii); and (3) declination of

the court's supplemental jurisdiction to consider Gadson's claims under state law, *see* 28 U.S.C. § 1367(c)(3).

## CONCLUSION

The Court dismisses this action for the reasons set forth in this order. The Court, however, grants Gadson 30 days' leave to file a second amended complaint in which he alleges facts to state a claim under FHA, as well as any claims under state law, all on his own behalf, as specified above. For the reasons set forth in this order, the Court denies all of Gadson's latest requests for immediate injunctive relief, including in his TRO motion. (ECF 17.) The Court directs the Clerk of Court to terminate ECF 17. The Court's denial of Gadson's latest requests for immediate injunctive relief are without prejudice to his seeking such relief in connection with a second amended complaint, as specified above.

If Gadson does not file a second amended complaint within the time allowed, the Court will direct the Clerk of Court to enter a judgment dismissing this action. The effect of that judgment will be: (1) dismissal of Gadson's claims brought on behalf of his minor daughter without prejudice; (2) dismissal of Gadson's own claims under the FHA for failure to state a claim on which relief may be granted, *see* 28 U.S.C. § 1915(e)(2)(B)(ii); and (3) declination of the court's supplemental jurisdiction to consider Gadson's claims under state law, *see* 28 U.S.C. § 1367(c)(3).

The Court directs the Clerk of Court to hold this matter open on the docket until a civil

judgment is entered.

SO ORDERED.

Dated:     August 26, 2025
           New York, New York

                                    /s/ Laura Taylor Swain
                              _____
                                  LAURA TAYLOR SWAIN
                              Chief United States District Judge